UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

**JOHN ANTHONY BANDY,**

    **Plaintiff,**

v.                                                                                   Case No.: 5:21-cv-00035

**SHENANDOAH GROWERS, INC.,**

**SERVE:**
**Corporation Service Company,**                    **JURY TRIAL DEMANDED**
**Registered Agent**
**100 Shockoe Slip Fl. 2**
**Richmond, VA 23219**

    **Defendant.**

## **COMPLAINT**

The above-named Plaintiff, John Anthony Bandy ("Plaintiff" or "Mr. Bandy"), by counsel, states as his Complaint against Defendant Shenandoah Growers, Inc. ("SGI") the following:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by Title VII of the Civil Rights Act of 1964, as codified under 42 U.S.C. §§ 2000e, *et seq.*, 42 U.S.C. § 2000e-5(f) ("Title VII"). *See generally* 28 U.S.C. §§ 1331, 1343(a)(4).

2. This Court has jurisdiction over the related state law claims, as they share a common nucleus of operative fact with Mr. Bandy's federal claims. *See* 28 U.S.C. § 1367.

3. SGI is incorporated under the laws of the Commonwealth of Virginia and has its principal place of business in Rockingham County and/or Harrisonburg City, Virginia.

4. The acts and/or omissions of SGI, from which the following causes of action arise, occurred within Rockingham County, Virginia.

5. Venue is appropriate as the acts and/or omissions of Defendant from which these causes of action arise occurred within the Western District of Virginia. *See* 28 U.S.C. § 1391(b)(2).

6. Mr. Bandy timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in October of 2019. Mr. Bandy received a Dismissal and Notice of Rights from the EEOC dated February 10, 2021, attached hereto as **EXHIBIT A**. Mr. Bandy files suit within ninety (90) days of receipt of that Dismissal and Notice of Rights.

## II. THE PARTIES

7. Mr. Bandy was a resident of Roanoke County, Virginia, at all times relevant. Mr. Bandy identifies his national origin as American, race as Caucasian, and his color as White.

8. SGI is a commercial farm located in Rockingham County and/or Harrisonburg City, Virginia. SGI also maintains other worksites within and outside of the Commonwealth of Virginia. Mr. Bandy worked primarily out of SGI's Rockingham County, Virginia worksite.

## III. FACTUAL ALLEGATIONS

9. On February 4, 2019, Mr. Bandy was hired as the full-time General Manager for SGI's Harrisonburg, Virginia commercial farm facility.

10. Prior to Mr. Bandy's employment at SGI, Mr. Bandy had 37 years of prior

experience in the food production and distribution industry.

11. Mr. Bandy met SGI's legitimate business expectations; in fact, Mr. Bandy was never disciplined according to SGI's progressive disciplinary policy. Mr. Bandy was not employed long enough with SGI to receive a performance review.

### Mr. Bandy learns of race discrimination from Caucasian production workers.

12. Shortly after Mr. Bandy began his employment, Mr. Bandy was approached by two Caucasian, White, English-speaking employees at the Harrisonburg location.

13. The Caucasian, White, English-speaking employees informed Mr. Bandy that there was a pattern and practice of Caucasian, White, English-speaking employees being terminated, or constructively discharged, in favor of Latino, Spanish-speaking individuals.

14. Mr. Bandy observed a lower-level, bilingual, Latina supervisor, Blanca Portillo, act in a discriminatory manner towards Caucasian, White, English-speaking subordinates.

15. Specifically, Supervisor Portillo terminated Caucasian, English-speaking employees without regard to SGI's progressive disciplinary policy. Upon information and belief, these Caucasian, White, English-speaking employees did not engage in acts that would require immediate termination. And, Ms. Portillo did not treat Latino, Spanish-speaking employees in this same manner.

16. Upon information and belief, the Harrisonburg area has a large population of immigrants, who are citizens of several Central American countries, including El Salvador, Honduras, and Guatemala.

### Mr. Bandy meets with Human Resources Director, Melissa Gatton to voice complaints of race and national origin discrimination.

17. In March of 2019, Mr. Bandy met with SGI Human Resources Director Melissa Gatton over his observations of Supervisor Portillo's conduct.

18. Indeed, Mr. Bandy complained of the pattern and practice of qualified, Caucasian, White, English-speaking employees being terminated without apparent cause without following SGI's progressive disciplinary policy. Mr. Bandy also did not observe any disciplinary documentation issued against terminated Caucasian employees.

19. Director Gatton recounted a conversation in which she had participated with Eric Wright, a supervisor on the same level of the corporate ladder as Supervisor Portillo, with Mr. Bandy during this meeting.

20. Director Gatton stated that Supervisor Wright advised her that "it was best to hire Hispanic women because they're harder workers [than Caucasian employees]."

21. Supervisor Wright is the son of Vice President of Sales and Procurement Steve Wright, one of SGI's executive officers, and a "dotted-line" supervisor to Mr. Bandy's supervisor, Vice President of Operations Jimmy Ferrell.

**Mr. Bandy attempts to root out discriminatory behavior through trainings and progressive discipline.**

22. After his meeting with Director Gatton, Mr. Bandy began weekly training meetings with Human Resources and subordinate supervisors to teach non-discriminatory employment practices.

23. Mr. Bandy informed his supervisor, Supervisor Ferrell, that he was conducting these trainings and the reasoning for the training.

24. Mr. Bandy coached Supervisor Wright to address his discriminatory communications with Caucasian subordinate employees pursuant to SGI's progressive

4

disciplinary process. Upon information and belief, Supervisor Wright informed Vice President Wright about Mr. Bandy coaching him for racially discriminatory employment practices.

**Mr. Bandy begins to make safety complaints to Mr. Ferrell, including lack of comprehensive safety plan/program and dangerous, broken equipment.**

25. In February of 2019, Mr. Bandy complained to Supervisor Ferrell that SGI lacked a comprehensive safety plan for its employees.

26. SGI employees worked in potentially dangerous conditions, due in part to wet/damp conditions and heavy equipment and items.

27. Mr. Bandy also complained to SGI's management about safety issues related to a broken forklift that SGI refused to pay its vendors to repair. Mr. Bandy specifically complained about the safety issues related to this forklift, and the potential injury to employees, up until his unlawful termination from SGI.

28. Supervisor Ferrell ignored Mr. Bandy about the need for a comprehensive safety plan and the dangerous forklift.

29. In response to the suggested comprehensive safety plan, Supervisor Ferrell merely verbally informed Supervisor Portillo and Supervisor Wright to "watch out for safety," without further direction or concern.

30. On or about June 7, 2019, Mr. Bandy provided Supervisor Wright with a written disciplinary action, due to Supervisor Wright's discriminatory and abusive language towards a subordinate employee.

31. On June 14, 2019, Mr. Bandy was called to the office of Human Resources Vice President Darcy Furr. When Mr. Bandy arrived, he noted that Supervisor Ferrell, his

supervisor, was also present.

32. Mr. Bandy was handed a termination notice which indicated unsatisfactory performance, "profit decline," "no probability of improvement," and that "supervisory staff indicated a loss in faith in [Mr. Bandy's] ability to lead." During his employment, Mr. Bandy had not received any negative feedback from his superiors regarding his performance or his ability to lead.

33. As for a few examples of Mr. Bandy's positive work performance, Mr. Bandy took safety matters into his own hands and worked directly with Corporate Safety Director John Jeffries to improve worker safety. Due to Mr. Bandy's engagement with employees, workers' compensation claims and worker turnover decreased during Mr. Bandy's employment, saving SGI money and boosting profits. Further, SGI had a process called "POD Proof of Delivery." This process essentially tracked whether SGI's perishable products were delivered correctly. Prior to Mr. Bandy's employment, the average number of lost PODs was 25. During Mr. Bandy's employment, Mr. Bandy implemented a process that resulted in few to no lost PODs; again, Mr. Bandy boosted SGI's profits by preventing losses.

34. The acts and/or omissions of Human Resources Vice President Furr Supervisor Ferrell, Vice President Steve Wright, Supervisor Eric Wright, Director Gatton, and other employees, all occurred within the scope of their employment. SGI is therefore liable on the basis of *respondeat superior*.

35. SGI engaged in discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Bandy and would not have taken the discriminatory

actions against him but for Mr. Bandy's complaints about safety and race/national origin/color discrimination. Due to the acts and omissions of SGI, Mr. Bandy was retaliated against all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. and the VOSH statute, Va. Code Ann. § 40.1-51.2:1.

### COUNT I:  CLAIM FOR TITLE VII RACE/COLOR RETALIATION

36. Mr. Bandy incorporates by reference herein the preceding paragraphs of this Complaint.

37. At all times material hereto, SGI had an obligation to maintain a work environment that was not charged with racial discrimination and hostile to Caucasian, White, non-Hispanic, American, English-speaking employees.

38. Mr. Bandy made complaints about the discriminatory treatment of Caucasian, White, non-Hispanic, American, English-speaking employees.

39. Mr. Bandy also conducted weekly trainings in order to address the race, national origin, and color discrimination prevalent at SGI.

40. Mr. Bandy's supervisors were aware of his complaints of race, national origin, and color discrimination.

41. Shortly after Mr. Bandy made his complaints about race, national origin, and color discrimination, Mr. Bandy suffered a pretextual termination.

42. Mr. Bandy met the legitimate business expectations of SGI; in fact, he never received progressive discipline under SGI's progressive discipline policy.

43. The above-referenced supervisory employees were acting in the course and scope of their employment with SGI at the time of their actions, therefore, SGI is liable for their actions under the doctrine of *respondeat superior*. Their actions against Mr. Bandy were

committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

44. As a direct and proximate result of Defendant's actions, Mr. Bandy suffered, and will continue to suffer, pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

45. At all times material hereto, Defendant engaged in a retaliatory practice or practices with malice or reckless indifference to the federally protected rights of Mr. Bandy, so as to support an award of punitive damages.

46. The above-described acts by Defendant constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

47. Mr. Bandy is entitled to all reasonable costs, including attorneys' fees associated with this matter, plus interest, pursuant to 42 U.S.C. § 2000e-5(k).

**COUNT II:  CLAIM FOR TITLE VII NATIONAL ORIGIN RETALIATION**

48. Mr. Bandy incorporates by reference herein the preceding paragraphs of this Complaint.

49. At all times material hereto, SGI had an obligation to maintain a work environment that was not charged with racial discrimination and hostile to Caucasian, White, non-Hispanic, American, English-speaking employees.

50. Mr. Bandy made complaints about the discriminatory treatment of Caucasian, White, non-Hispanic, American, English-speaking employees.

51. Mr. Bandy also conducted weekly trainings in order to address the race, national origin, and color discrimination prevalent at SGI.

52. Mr. Bandy's supervisors were aware of his complaints of race, national origin, and color discrimination.

53. Shortly after Mr. Bandy made his complaints about race, national origin, and color discrimination, Mr. Bandy suffered a pretextual termination.

54. Mr. Bandy met the legitimate business expectations of SGI; in fact, he never received progressive discipline under SGI's progressive discipline policy.

55. The above-referenced supervisory employees were acting in the course and scope of their employment with SGI at the time of their actions, therefore, SGI is liable for their actions under the doctrine of *respondeat superior*. Their actions against Mr. Bandy were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

56. As a direct and proximate result of Defendant's actions, Mr. Bandy suffered, and will continue to suffer, pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

57. At all times material hereto, Defendant engaged in a retaliatory practice or practices with malice or reckless indifference to the federally protected rights of Mr. Bandy, so as to support an award of punitive damages.

58. The above-described acts by Defendant constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

59. Mr. Bandy is entitled to all reasonable costs, including attorneys' fees associated with this matter, plus interest, pursuant to 42 U.S.C. § 2000e-5(k).

### COUNT III: CLAIM FOR DISCRIMINATION[1] IN VIOLATION OF THE VIRGINIA OCCUPATIONAL SAFETY AND HEALTH ACT ("VOSH")

60. Mr. Bandy incorporates by reference herein the preceding paragraphs of this

---

[1] The VOSH statutes uses the word "discrimination," but the Virginia Department of Labor and Industry states that this claim should be analyzed under the traditional framework of retaliation cases. *See* 16 VAC 25-60-110.

Complaint.

61. Mr. Bandy made complaints concerning safety issues related to employees at SGI.

62. Specifically, Mr. Bandy complained about the lack of a comprehensive safety plan, given that SGI's Harrisonburg worksite had potentially dangerous issues.

63. Mr. Bandy made his safety to complaints to his supervisor, Mr. Ferrell, and other supervisory employees.

64. Shortly after Mr. Bandy made his complaints about employee safety, Mr. Bandy suffered a pretextual termination.

65. Mr. Bandy met the legitimate business expectations of SGI; in fact, he never received progressive discipline under SGI's progressive discipline policy.

66. The above-referenced supervisory employees were acting in the course and scope of their employment with SGI at the time of their actions, therefore, SGI is liable for their actions under the doctrine of *respondeat superior*. Their actions against Mr. Bandy were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

67. As a direct and proximate result of Defendant's actions, Mr. Bandy suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

68. At all times material hereto, Defendant engaged in a retaliatory practice or practices with malice or reckless indifference to the federally protected rights of Mr. Bandy, so as to support an award of punitive damages.

69. The above-described acts by Defendant constitute discrimination in violation of VOSH statute, Va. Code Ann. § 40.1-51.2:1.

70. Mr. Bandy seeks, and is entitled to, all appropriate relief for this claim pursuant to

Va. Code § 40.1-51.2:2(B), which pursuant to the DOLI's VOSH Program Directive 04-011E, issued July 1, 2016, includes injunctive and equitable relief, including reinstatement, compensatory damages, including lost wages and benefits and emotional pain and suffering damages, and punitive damages. In addition, the Supreme Court of Virginia has found that a violation of VOSH should be abated "without economic loss to the employee," thus entitling Mr. Bandy to attorneys' fees and costs.

71. Mr. Bandy is entitled to prejudgment interest pursuant to Va. Code § 6.2-302.

WHEREFORE, Plaintiff John Anthony Bandy prays for judgment against Defendant Shenandoah Growers, Inc., and for injunctive relief, equitable relief, compensatory damages, punitive damages, together with prejudgment interest, post-judgment interest, back pay, front pay, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY DEMANDED.

Respectfully submitted,

**JOHN ANTHONY BANDY**

/s/N. Winston West, IV
Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
Brittany M. Haddox, Esq. (VSB # 86416)
Monica L. Mroz, Esq. (VSB # 65766)
STRELKA EMPLOYMENT LAW
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA  24011
Tel:  540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com

brittany@strelkalaw.com
monica@strelkalaw.com

*Counsel for Plaintiff*

12